IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN THOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>ORECK VACUUMS, and GREG LAWSON, Individually.<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE**<br><br>Case No. 2:09-cv-00737-CW<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge David Nuffer |

Defendants' Motion for Summary Judgment[1] and Plaintiff's Motion to Strike[2] are referred to the magistrate judge by consent of the parties.[3] After carefully considering the filings, Defendants' summary judgment motion is GRANTED IN PART as provided herein. Plaintiff's motion to strike is DENIED.

## BACKGROUND

John Thomas (Thomas) worked as Store Manager for Oreck Vacuums (Oreck) until February 11 of 2008, when managing owner Greg Lawson (Lawson) fired him.[4] Each side presents a drastically different narrative explaining why this termination occurred.

According to Thomas, Lawson's decision was one primarily motivated by religious belief and anti-military sentiment.[5] Before the termination of his employment, Thomas had been

---

[1] Motion for Summary Judgment, docket no. 14, filed February 26, 2010.

[2] Motion to Strike, docket no. 21, filed March 17, 2010.

[3] Order [granting parties' stipulated motion docket no. 25], docket no. 31, filed March 22, 2010; Referral, docket no. 32, filed March 23, 2010.

[4] Complaint at 5. The complaint is attached as Ex. A, to Notice of Removal, docket no. 1, filed August 21, 2009.

[5] *Id.* at 6.

seeking to enlist in the military.[6] When Thomas approached Lawson about his decision in November of 2007, Lawson discouraged him from joining.[7] According to the Complaint, Lawson said that military service would interfere with Thomas's job and would rob his family "of blessings from God" because it would necessitate working on Sunday.[8] The day after this discussion, Thomas found a job posting on the website monster.com for a management position within his store, and believed that Lawson was planning to replace him.[9] In late January, 2008, after the holiday rush had ended and several store projects had been completed,[10] Thomas told Lawson he would likely need some time off in May to be able to complete training for the National Guard.[11] Shortly thereafter, Lawson fired Thomas without explanation.[12]

Defendants, in contrast, point to Thomas's repeated failure to meet company sales goals and the declining performance of his store.[13] Though Thomas had won sales awards earlier in the year 2007, by December 2007 and January 2008, Defendants say Thomas's performance was substandard.[14]

In addition, Lawson says he was concerned by Thomas's reaction to a mystery shopper program.[15] Thomas advised against the program, and when it was nevertheless implemented, Thomas wrote an email saying he felt the structure of the program was unfair and that he was

---

[6] *Id.* at 3–4.

[7] *Id.*.

[8] *Id.* at 4.

[9] Memorandum Opposing Motion for Summary Judgment (Opposing Memorandum) at 20, docket no. 20, filed March 17, 2010.

[10] *See* Opposing Memorandum at 42; Deposition of John Thomas at 93, attached as Ex. B to Memorandum in Support of Motion for Summary Judgment (Supporting Memorandum), docket no. 15, filed February 26, 2010.

[11] Complaint at 5.

[12] *Id.* at 5–6.

[13] Supporting Memorandum at 2.

[14] *Id.* at 3.

[15] *Id.* at 4.

"withdrawing" and would not personally accept the related bonuses, although he would allow his employees to participate.[16] Lawson characterized this as insubordination,[17] and points to this event, along with Thomas's declining sales, as the true motivation behind Thomas's termination.[18]

Following his termination, Thomas filed suit in Utah State court alleging four separate causes of action: religious discrimination and disparate treatment in violation of Title VII;[19] termination based on an application to the armed forces in violation of the Uniformed Services Employment and Reemployment Rights Act;[20] termination based on an application to the armed forces in violation of Utah's public policy wrongful termination doctrine;[21] and outrageous harassment that amounted to tortious intentional infliction of emotional distress.[22] Due to the federal nature of the Title VII claim, Defendants successfully removed the case to this court on August 21, 2009.[23] Subsequently, on February 26, 2010, Defendants moved for summary judgment on all claims.[24]

Following the motion for summary judgment, Thomas moved to strike portions of the affidavits submitted with Defendants' motion for summary judgment, alleging that they did not meet the standards required by Rule 56 of the Federal Rules of Civil Procedure.[25] One

---

[16] *Id.* at 3. *See also* Opposing Memorandum at 7; Email from John Thomas to Greg Lawson (Feb. 8, 2008, 13:22:11MST) (Email from John Thomas), attached as Ex. 3 to Deposition of John Thomas.

[17] Email from John Thomas.

[18] Supporting Memorandum at 2.

[19] Complaint at 6–7.

[20] *Id.* at 7–8.

[21] *Id.* at 8–9.

[22] *Id.* at 9–10.

[23] Notice of Removal.

[24] Motion for Summary Judgment. *See also* Supporting Memorandum at 2.

[25] Plaintiff's Motion to Strike; Memorandum Supporting Motion to Strike at 1, docket no 22, filed March 17, 2010.

paragraph was challenged as stating a legal conclusion;[26] three paragraphs were argued to be irrelevant;[27] and five paragraphs were alleged to be hearsay.[28]

## DISCUSSION

### Summary Judgment

Summary judgment allows cases to be decided prior to a trial if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[29] The determination is essentially whether, under the established law, there are factual issues in dispute which might reasonably affect the outcome of the case.[30]

### Title VII

Under the *McDonnell Douglas* test established by the Supreme Court, once a plaintiff establishes the prima facie elements of disparate treatment, a presumption of discrimination arises.[31] The burden then shifts to the defendant to show there was a legitimate, non-discriminatory basis for the actions.[32] If that burden is met, then the plaintiff must show these legitimate reasons are pretext fabricated to disguise a discriminatory decision.[33]

Whether the parties have borne their burdens through each of these steps is heavily dependent on contested facts. First, for the prima facie claim of disparate treatment, the plaintiff

---

[26] Memorandum Supporting Motion to Strike at 4.

[27] *Id.* at 5.

[28] *Id.* at 4–5.

[29] Fed. R. Civ. P. 56(c).

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[31] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[32] *Id.* at 802.

[33] *Id.* at 804.

4

must show he was treated less favorably than other employees because of his protected status.[34] The discriminatory intent, which establishes a causal connection between the plaintiff's status and his treatment, is critical.[35] Thomas argues that he has demonstrated this causal connection through indirect evidence,[36] but the Defendants maintain that the timeline cannot support such an inference.[37]

There are significant factual disputes. The conflict between the parties depends in large part on whether the monster.com job posting was intended to find a replacement for Thomas or for another employee;[38] whether it would have been difficult to replace Thomas during the holiday retail season;[39] and what exactly Lawson said about religion, military service, and another employee who had joined the armed forces.[40]

Defendants maintain that even if Thomas has borne the burden of establishing a causal connection, they have advanced legitimate business reasons for Thomas's termination: his poor sales record and his refusal to participate in the mystery shopper program.[41] Both points, however, depend on contested issues of fact. Thomas's sales numbers are open to multiple interpretations, and there is substantial dispute whether Thomas's email about the mystery

---

[34] *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

[35] *Id.*

[36] Opposing Memorandum at 23.

[37] Reply to Memorandum Opposing Summary Judgment (Reply) at 32–33, docket no. 37, filed March 29, 2010.

[38] *See* Deposition of John Thomas at 51–53; Written Narrative of Greg Lawson attached as deposition Ex. 7 to Deposition of Greg Lawson, attached as Ex. A to Reply.

[39] *See* Reply at 31.

[40] For example, *compare* Deposition of Greg Lawson at 91 *with* Deposition of John Thomas at 49–50 *and* Opposing Memorandum at 20 (whether or not Lawson said Thomas' decision to join the military was a "slap in the face"). Also, *compare* Deposition of John Thomas at 49 *with* Reply at 25 and 30 (concerning whether Lawson told Thomas that military service had negatively impacted the family of another employee).

[41] Reply at 33.

shopper program can be construed as "refusal to participate" against a "direct command".[42] Determination of these factual issues bears heavily on whether Defendants have advanced a legitimate reason for Thomas's termination, and if that explanation is merely pretext. There is a significant need for fact-finding in relation to the Title VII claim, and summary judgment is not appropriate.

### Uniformed Services Employment and Reemployment Rights Act

The Uniformed Services Employment and Reemployment Rights Act (USERRA) prohibits employers from firing anyone because they serve, or have applied to serve, in the federal armed forces.[43] It applies to individuals who apply to join the armed forces, as well as those actually serving.[44] In evaluating a USERRA claim, the appropriate test is whether military service was "a substantial or motivating factor" in employment discrimination.[45] This is true even if there were also legitimate bases for the action, unless the employer can show that it would have taken the action regardless of the employee's military status.[46]

In this case, there is considerable contention between the parties on the role that Thomas's interest in military service played in his termination. As discussed above, there are issues of material fact that must be resolved in order to determine whether Defendants had legitimate reasons for the termination, and whether Thomas's interest in military service was

---

[42] *Compare* Supporting Memorandum at 4 *with* Opposing Memorandum at 7–8.

[43] A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for services, or obligation.
Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(a).

[44] *Id.*

[45] *Id.* at (c)(1). *See also Lewis v. Rite of Passage*, 217 Fed. Appx 785, 786 (10th Cir. 2007); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001).

[46] 38 U.S.C. § 4311(c)(1).

related to their determination. Therefore, summary judgment cannot be granted on the USERRA claim.

## Wrongful Termination in Violation of Public Policy

In Utah there is a public policy exception to the general rule that at-will employment relationships may be terminated for any reason.[47] If an employee is fired for reasons adverse to "clear and substantial public policy," that individual may bring a tort action against the former employer.[48] Without reaching the legal issue of USERRA's reflection of Utah public policy, it is clear that the wrongful termination claim, like the USERRA claim, hinges on whether or not Thomas was fired for seeking to enlist in the military and can therefore establish a causal connection between Utah public policy and his termination. As discussed above, this depends heavily on contested facts, and summary judgment is accordingly denied for this claim.

## Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress (IIED) is a tort action which allows recovery against defendants who cause plaintiffs severe emotional distress when: (1) they intentionally engage in outrageous and intolerable conduct towards the plaintiffs that offends society's decency and morality and (2) they knew or should have known that their conduct would inflict emotional distress.[49]

In this instance, Thomas points to his termination, as well as the general work environment, as having caused him "severe mental anguish and emotional distress."[50] Thomas claims he was fired at the door of the store when he arrived for work, without any warning or

---

[47] *Peterson v. Browning*, 832 P.2d 1280, 1281 (Utah 1992).

[48] *Id.* at 1281. Such public policy generally exists when there is clear "statutory language expressing the public conscience," whether state or federal. *Id.* at 1282–83.

[49] *Russell v. Thompson Newspapers*, 842 P.2d 896, 905 (Utah 1992) (citing *Samms v. Eccles*, 358 P.2d 344, 346–47 (Utah 1961)).

[50] Complaint at 9.

explanation.[51] When he told Lawson this termination was putting him in a difficult position, Lawson allegedly replied "I don't care, hand me your keys and leave."[52] In his deposition, Thomas describes subsequently becoming depressed, averaging "two to three hours of sleep a night, trying to figure out how . . . to make ends meet," and not having the financial resources to visit with his grandmother in California before she died.[53] Defendants point out that Thomas never sought medical treatment for his depression and anxiety,[54] though Thomas alleges such treatment was unavailable given his financial circumstances.[55]

Even if Thomas meets the subjective requirement of actually having suffered emotional distress, however, he can only prevail if Lawson's actions meet the objective requirement of outrageousness required to support an IIED claim. A defendant's conduct is outrageous only where that conduct is "extraordinarily vile," "atrocious," and "utterly intolerable in a civilized community."[56] Traditionally, this has been a high bar,[57] and courts have been unsympathetic to former employees suing over their terminations.[58] Under Utah law, "mere discharge from

---

[51] *Id.* at 5–6.

[52] *Id.* at 6.

[53] Deposition of John Thomas at 95–96.

[54] Supporting Memorandum at 9.

[55] Opposing Memorandum at 14.

[56] *Retherford v. AT&T*, 844 P.2d 949, 977 n.19 (Utah 1992).

[57] Utah courts have held that an individual might have a claim for IIED against a supervisor who repeatedly lied to employees, flagrantly disregarded their safety, created unnecessary work for them, and physically abused them. *Cabaness v. Thomas*, No. 20080446, 2010 WL 1628797 (Utah Apr. 23, 2010). Similarly, a woman who alleged she and her children had been forcefully evicted from their apartment by a landlord who kept all their personal possessions, even though she tendered current rent, was held to have an IIED claim. *Pentecost v. Harward*, 699 P.2d 696 (Utah 1985).

[58] In addition to the other cases cited in this paragraph, see *Robertson v. Utah Fuel Co.*, 889 P.2d 1382, 1389–90 (Utah App., 1995) (holding that a supervisor, who claimed he was required to confess his drug addiction to his employees and was then terminated, had not alleged facts sufficiently outrageous to maintain an IIED claim).

employment does not constitute outrageous or intolerable conduct by an employer."[59] In one case, when a 64 year old man was fired shortly before retirement in an "insensitive" and abrupt manner,[60] the court commented that the "termination may have been unkind, but it was not outrageous."[61] Similarly, in *Larson v. SYSCO Corp*, an employee was laid off without any explanation or warning.[62] The Utah Supreme Court affirmed the decision of the trial court to grant summary judgment, commenting that "[w]hile termination can be an emotionally distressing event in one's life, mere termination alone does not constitute the intentional infliction of emotional distress."[63]

Even if everything Thomas maintains is true and all inferences are drawn in his favor, his treatment by Lawson does not rise to the legal standard of outrageousness. As a result, on this claim, Defendants' motion for summary judgment is granted.

**Motion to Strike**

Because the court's decision on this motion denies summary judgment on the claims relevant to the factual assertions attacked by the motion to strike, the motion to strike is denied. The evidentiary issues related to these facts will need to be addressed at trial. For the purposes of this Motion for Summary Judgment, the entire record was considered.

---

[59] *Sperber v. Galigher Ash Co.*, 747 P.2d 1025, 1028 (Utah 1987). This is true even though "every employee who believes he has a legitimate grievance concerning his discharge from employment experiences some emotional anguish as a result of that belief." *Id.* at 1029.

[60] *Murphy v. Facet 58, Inc.*, 329 F.Supp.2d 1260, 1271 (D. Utah, 2004) (denying the plaintiff's IIED claim based on his allegation that he was led to believe he would be able to retire early but was then harshly told he was being fired).

[61] *Id.* at 1272.

[62] *Larson v. SYSCO Corp.*, 767 P.2d 557, 558 (Utah 1989).

[63] *Id.* at 561.

**ORDER**

IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment[64] is GRANTED IN PART and DENIED IN PART. Because there are disputed issues of material fact relating to the Plaintiff's termination, summary judgment is denied as to the Title VII, USERRA, and wrongful termination against public policy claims. Summary judgment is granted, however, against Thomas on his claim for intentional infliction of emotional distress.

IT IS FURTHER ORDERED that the Plaintiff's Motion to Strike[65] is DENIED.

Dated this 29th day of June, 2010.

BY THE COURT

_____
Magistrate Judge David Nuffer

---

[64] Motion for Summary Judgment, docket no. 14, filed February 26, 2010.

[65] Motion to Strike, docket no. 21, filed March 17, 2010.